DANIEL O. BLAU (Cal. Bar No. 305008)
Email: blaud@sec.gov
JASMINE M. STARR (Cal. Bar No. 259473)
Email: starrja@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UULALA, INC., OSCAR GARCIA, and MATTHEW LOUGHRAN,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## **JURISDICTION AND VENUE**

1.　The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

2.　The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)],

and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

3. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

4. Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Acts, transactions, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this District. Defendant Uulala, Inc. has its principal place of business in this District, and offers and sales of securities took place in this District.

## SUMMARY OF THE ACTION

5. This case involves the fraudulent and unregistered offer and sale of digital asset securities known as UULA tokens by Defendant Uulala, Inc. ("Uulala"), and its subsequent fraudulent and unregistered offer and sale of promissory notes that could be converted to equity (the "Convertible Notes"). Uulala purports to be a "financial solutions platform that provides the world's underbanked populations access to the financial inclusion tools they need to change their future." Uulala represented to investors that it had developed a functional mobile phone application ("app") that allows users to store, transfer, and borrow money, pay bills, make purchases, earn rewards for this activity, and establish a credit history to qualify for microcredit loans.

6. Uulala's co-founder and chief executive officer, Defendant Oscar Garcia ("Garcia"), was the primary architect of both fraudulent offerings. Defendant Matthew Loughran ("Loughran"), Uulala's co-founder and former chief marketing officer, negligently participated in the fraudulent representations for the offering of UULA tokens and was instrumental in the unregistered offer and sale of UULA tokens.

7. From December 2017 through January 2019, Uulala raised more than $9 million from over a thousand investors, including those in the U.S., through the sale of UULA tokens in an initial coin offering (ICO). The UULA tokens offered and sold to investors constituted a "security" under the federal securities laws. The definition of "security" includes a range of investment vehicles, including "investment contracts." Investment contracts are instruments involving the investment of money in a common enterprise with the reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. Investors in Defendants' offering of UULA tokens reasonably viewed the offering as an opportunity to profit if Uulala was successful in further developing its financial platform and app.

8. Uulala, Garcia, and Loughran promoted the UULA offering primarily through a white paper publicly available through Uulala's website (the "UULA White Paper"). Garcia and Loughran were the principal drafters of the UULA White Paper and reviewed and approved its content. The UULA White Paper contained false claims about Uulala's technology, including that it incorporated "Proprietary Patent Pending Decentralized Database Technology." This technology was actually owned and patented by a different company, Uulala had no rights to the technology, and Uulala had not in fact incorporated that technology at the time of the UULA offering. Defendants also falsely claimed in the UULA White Paper that Uulala's technology included "proprietary micro-credit algorithms" when in fact such algorithms were not developed at the time of the UULA offering.

9. Starting in 2019, Uulala and Garcia raised an additional $500,000 from four U.S. investors through its Convertible Notes offering. Garcia created a presentation slide deck to promote the offering, which they showed to potential investors. This offering document contained false financial information about Uulala, including claiming that it had over $250,000 in revenue in 2019, which Garcia admitted was false.

10. In this action, the Commission seeks permanent injunctions prohibiting future violations of the federal securities laws by Defendants, conduct-based injunctions permanently enjoining Uulala and Garcia from participating, directly or indirectly, in any unregistered offering of securities, including any digital asset security, undertakings by Defendants to permanently disable and delist the tokens, and an order imposing a civil penalty on Defendants.

## THE DEFENDANTS

11. **Uulala, Inc.** is a privately held corporation formed in Delaware in 2017. Uulala's principal place of business is in Ontario, California.

12. **Oscar Garcia**, age 47, resides in Riverside, California. He co-founded Uulala in 2017 and has served continuously as its chief executive officer ("CEO"). He is the majority owner of Uulala.

13. **Matthew Loughran**, age 39, resides in Fulton, California. He co-founded Uulala in 2017 and, until recently, served continuously as its chief marketing officer ("CMO").

## THE ALLEGATIONS

A. **The Securities Registration Requirements**

14. Congress enacted the Securities Act of 1933 to regulate the offer and sale of securities. In contrast to ordinary commerce, which often operates under the principle of caveat emptor, Congress enacted a regime of full and fair disclosure, requiring those who offer and sell securities to the investing public to provide sufficient, accurate information to allow investors to make informed decisions before they invest. Such disclosure is ordinarily provided in a registration statement, which provides public investors with, among other things, financial and managerial information about the issuer of the securities, details about the terms of the securities offering, the proposed use of investor proceeds, and an analysis of the risks and material trends that would affect the enterprise.

15. Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)] provides that,

unless a registration statement is in effect as to a security, it is unlawful for any person, directly or indirectly, to sell securities in interstate commerce. Section 5(c) of the Securities Act [15 U.S.C. § 77e(c)] provides a similar prohibition against offers to sell or offers to buy, unless a registration statement has been filed. If a violation of Sections 5(a) or 5(c) is established, a defendant may avoid liability by proving that the securities offering qualified for a registration exemption. Thus, Sections 5(a) and 5(c) of the Securities Act prohibit the unregistered offer or sale of securities in interstate commerce absent an applicable exemption.

16. In a variety of circumstances, courts have found that investment vehicles other than traditional stocks and bonds constitute investment contracts and therefore securities. As the Supreme Court of the United States has noted, Congress defined "security" broadly to embody a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."

17. On July 25, 2017, the Commission issued what is often called the "DAO Report." The DAO Report "advise[d] those who would use . . . distributed ledger or blockchain-enabled means for capital raising, to take appropriate steps to ensure compliance with the U.S. federal securities laws," and found that digital assets at issue in that matter were investment contracts and therefore securities.

**B.   The UULA Tokens are Securities that Defendants Offered and Sold in Violation of the Securities Registration Requirements**

18. Beginning in at least December 2017 and continuing through at least January 2019, Uulala, Garcia, and Loughran offered and sold digital asset securities called UULA tokens. The company promoted the offering in a number of ways, including through its main website and its UULA White Paper publicly posted there. The UULA offering raised the equivalent of over $9 million from over a thousand investors, hundreds of whom were United States citizens. Investors paid for the UULA tokens, at prices ranging from $0.02 to $0.13, with U.S. dollars and digital

assets like Bitcoin and Ether.

19. The UULA tokens were offered and sold to all persons, not just those that might use Uulala's financial platform. Investors were not the intended users of Uulala's app, which was targeted towards the "underbanked." Uulala itself referred to token purchasers as investors, both internally and in answering questions from prospective investors. When someone purchased UULA, they accessed their account through an "investor vault" that displayed the words "you invested" and then showed the dollar value and number of UULA tokens purchased.

20. Investor funds were pooled in Uulala's accounts and digital asset wallets and used to fund Uulala's business, including for the further development of the app and tokens. Uulala told investors they would use the money raised to build and market the platform, which, if successful, would cause a reasonable person to expect an increase in the value of the token. Potential UULA token holders would need to rely on management's efforts in this regard, as they would have no role in the development or management of the Uulala token or platform.

21. Defendants assured prospective investors that, following distribution of the UULA tokens, they would be able to trade the tokens on various digital asset trading platforms.

22. Defendants also emphasized that only a finite number of UULA tokens would be created, such that rising demand for the tokens would cause their value to appreciate. Defendants told investors they would create a total of 750 million UULA tokens: 500 million for sale to the public; 150 million retained by Uulala; and 100 million to distribute to users of the Uulala app as incentives. The volume of tokens proposed to be issued bore no relation to the volume expected to be used.

23. During the offering period, the UULA tokens did not yet exist. In February 2019, after the conclusion of the offering, Uulala issued the UULA tokens to investors by putting them in token wallets that Uulala had created. Around the same time, Uulala also created a second token, which it called EUULA, and gave

investors the ability to exchange UULA tokens for EUULA tokens on a one-for-one basis. Unlike UULA tokens, EUULA tokens could be traded on digital asset trading platforms.

24. The UULA tokens are securities. Under the federal securities laws, Uulala, Garcia, and Loughran offered and sold these securities from at least December 2017 through January 2019. The UULA offering was required to be registered unless an exemption applied. Uulala has never filed a registration statement with the Commission for its offer and sale of UULA securities.

25. No exemptions from registration applied to the UULA offering. The UULA offering involved a general solicitation of investors and was made to investors throughout the United States., Uulala took no steps to verify investors' accredited status.

26. Uulala is liable for these registration violations as the issuer of the UULA tokens. Throughout the UULA offering, investors sent funds and digital assets to Uulala's accounts to purchase the UULA tokens.

27. Garcia, a co-founder and CEO, is liable for these registration violations because he directly offered and sold UULA tokens. He was the public face of Uulala and directly promoted the UULA offering online through the Uulala website, social media accounts, YouTube videos, conferences, and interviews to digital asset-focused media. He reviewed and approved the UULA White Paper that was posted on Uulala's website to solicit investors. He also had authority over the content of Uulala's website.

28. Loughran is liable for these registration violations because he indirectly offered and sold the UULA tokens and was a necessary participant and substantial factor in the offer and sale of UULA. As a co-founder and CMO, Loughran played an instrumental role in the offering through the drafting of the UULA White Paper and having final authority with Garcia over its contents. Loughran also oversaw the development of Uulala's token sale website.

### C. Defendants Offered and Sold the UULA Securities by Means of Material Misstatements

29. Defendants promoted the UULA offering through the UULA White Paper, which was available to the public without restriction on Uulala's website from approximately December 2017 through January 2019.

30. The contents of the UULA White Paper were drafted, reviewed, and approved by Garcia and Loughran.

31. The UULA White Paper solicited investment in UULA tokens, which investors could purchase through a website (tokensale.uulala.io) that linked to Uulala's main website (uulala.io).

32. Defendants also promoted the UULA offering through multiple social media sites. Loughran primarily controlled Uulala's social media sites.

33. In the UULA offering, Uulala, Garcia, and Loughran made multiple material misrepresentations to investors and potential investors.

#### 1. Misrepresentations Regarding Proprietary Patent Pending Technology

34. Throughout the UULA offering, one of the key features that Uulala, Garcia, and Loughran touted in the UULA White Paper was Uulala's use of a decentralized database technology, which it falsely claimed as "proprietary" and "patent pending."

35. The UULA White Paper highlighted "Uulala Proprietary Patent Pending Decentralized Database Technology." It claimed that "Uulala incorporates our proprietary dynamic fragmentation methodology of cryptographically splitting data into unique segments, utilizing the Reed Solomon erasure code and checksum algorithm, subsequently AES-256 encrypting the segments and finally decentralizing their distribution via SSL connection across multiple cloud storage providers. Once at rest in the Cloud, the encrypted data segments are completely protected from unauthorized access and brute force cracking attempts."

36. These claims were false. This technology was actually owned and patented by a different company and was not available to Uulala or incorporated into its platform. Uulala had made an attempt to license the other company's technology but was unsuccessful. Uulala never incorporated this technology into its application.

37. Garcia was personally involved in the attempt to license the other company's technology and knew at the time that the representations in the UULA White Paper were false.

38. Loughran relied on Garcia's representations that the technology had been licensed but negligently failed to confirm that information. Loughran drafted that section of the UULA White Paper based on language from the other company's website without speaking to anyone at the other company or seeing a licensing agreement.

### 2. Misrepresentations Regarding Proprietary Micro-Credit Algorithms

39. Throughout the UULA offering, Uulala, Garcia, and Loughran misrepresented that Uulala had developed and implemented micro-credit algorithms in its financial platform and app.

40. Under a description of "Uulala Services," the UULA White Paper claimed that "[o]ur proprietary micro-credit algorithms and processes can extrapolate users' purchase history and behavioral habits to forecast their true financial abilities in a moment by moment basis." It went on to claim that "[t]he Uulala platform is a unique system that tracks all financial activities and combines that with patented decentralized database technology to show what level of creditworthiness a user possesses."

41. These claims were false. The credit scoring algorithms were not fully developed, were not displayed on the frontend of the application, and Uulala was still in the process of developing them over two years after the UULA token sale started.

42. Loughran drafted the section in the UULA White Paper describing the

credit algorithms, including the false and misleading statements. Loughran relied on representations from Uulala's chief technology officer and negligently failed to confirm them.

43. Garcia reviewed and approved the entire UULA White Paper, including the false and misleading representations regarding the "proprietary micro-credit algorithms." Garcia knew that the credit scoring algorithms were not fully developed, and he approved these representations in the UULA White Paper knowing they were false.

### D. Uulala and Garcia's Material Misrepresentations in the Convertible Notes Offering

44. Beginning in the fall of 2019, Uulala and Garcia engaged in the offer and sale of the Convertible Notes that could be converted to equity and are securities.

45. The Convertible Notes offering raised approximately $500,000 from four individuals, all located in California and all personally known to Garcia.

46. Uulala and Garcia made material misstatements in connection with the Convertible Notes offering. In the presentation deck shown to prospective investors, Uulala and Garcia stated that Uulala had over $250,000 in revenue in 2019, when it actually had little to no revenue in 2019, and included arbitrary numbers for expenses and net income that were mere projections made in early 2019.

47. Uulala and Garcia gave this false and misleading information to prospective investors in late 2019 and 2020, without correcting the numbers or indicating they were projections that were not met.

### FIRST CLAIM FOR RELIEF
### Fraud in Connection with the Purchase or Sale of Securities
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against Defendants Uulala and Garcia)

48. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

49. Defendants Uulala and Garcia made misstatements as to (1) the proprietary, patent pending technology that was actually owned by a different company and not incorporated into Uulala's platform, and (2) the proprietary credit scoring algorithms that had not been developed and were never used in the Uulala app. In addition, Uulala and Garcia made misstatements in connection with the purchase and sale of the convertible notes as to its 2019 revenue and projections. Defendants knew the claims made regarding the technologies and 2019 revenue were false.

50. By engaging in the conduct described above, Uulala and Garcia, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter:

    (a) Employed devices, schemes, or artifices to defraud;

    (b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    (c) Engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

51. By reason of the foregoing, Uulala and Garcia violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Sections 17(a)(1), (2), and (3) of the Securities Act**

**(Against Defendant Uulala)**

52. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

53. Defendant Uulala made misstatements as to (1) the proprietary, patent pending technology that was actually owned by a different company and not incorporated into Uulala's platform, and (2) the proprietary credit scoring algorithms that had not been developed and were never used in the Uulala app. In addition, Uulala made misstatements in the offer and sale of the convertible notes as to its 2019 revenue and projections. Defendant knew the claims made regarding the technologies and 2019 revenue were false. Defendant obtained money by means of the fraud, as it received the investors' funds from the sales of the tokens and notes.

54. By engaging in the conduct described above, Uulala, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

    (a)    With scienter, employed devices, schemes, or artifices to defraud;

    (b)    With scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)    With scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

55. By reason of the foregoing, Uulala violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
### Fraud in the Offer or Sale of Securities
### Violations of Sections 17(a)(1) and (3) of the Securities Act
### (Against Defendant Garcia)

56. The Commission realleges and incorporates by reference paragraphs 1

through 47 above.

57. Defendant Garcia made misstatements as to (1) the proprietary, patent pending technology that was actually owned by a different company and not incorporated into Uulala's platform, and (2) the proprietary credit scoring algorithms that had not been developed and were never used in the Uulala app. In addition, Garcia made misstatements in the offer and sale of the convertible notes as to its 2019 revenue and projections. Defendant knew the claims made regarding the technologies and 2019 revenue were false.

58. By engaging in the conduct described above, Garcia, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) With scienter, employed devices, schemes, or artifices to defraud; and

(b) With scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

59. By reason of the foregoing, Garcia violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## FOURTH CLAIM FOR RELIEF
### Fraud in the Offer or Sale of Securities
### Violations of Sections 17(a)(3) of the Securities Act
### (Against Defendant Loughran)

60. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

61. Defendant Loughran failed to exercise due care in drafting the sections of the white paper asserting Uulala's ownership of patent-pending technology and its development of a micro-credit algorithm.

62. By engaging in the conduct described above, Loughran, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser, acting with negligence.

63. By reason of the foregoing, Loughran violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## FIFTH CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

64. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

65. Defendant Uulala, as the issuer of the securities, directly offered and sold securities in the form of UULA tokens.

66. Defendants Garcia and Loughran, directly and indirectly offered and sold UULA tokens, and were necessary participants and substantial factors in Uulala's offers and sales of UULA tokens.

67. By virtue of the foregoing, (a) without a registration statement in effect as to that security, Defendants, directly and indirectly, made use of the means and instruments of transportation or communications in interstate commerce and of the mails to sell securities through the use of means of a prospectus, and (b) made use of the means and instruments of transportation or communication in interstate commerce and of the mails to offer to sell through the use of a prospectus, securities as to which no registration statement had been filed.

68. By reason of the foregoing, Defendants directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 5 of the

Securities Act [15 U.S.C. § 77e].

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the Commission respectfully requests that the Court:

I.

Permanently enjoin Uulala and Garcia from directly or indirectly violating Sections 5 and 17(a) of the Securities Act [15 U.S.C. §§ 77e, 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

II.

Permanently enjoin Loughran from directly or indirectly violating Sections 5 and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77e, 77q(a)(3)].

III.

Permanently enjoin Uulala from participating, directly or indirectly, in any unregistered offering of securities, including any digital asset security.

IV.

Permanently enjoin Garcia from participating, directly or indirectly, in any unregistered offering of securities, including any digital asset security; provided, however, that such injunction shall not prevent Garcia from purchasing or selling securities for his own personal account.

V.

Order Uulala to undertake to (a) permanently disable all UULA and EUULA tokens in its possession or control within 10 days of the entry of the final judgment, including any UULA or EUULA tokens owned by, beneficially owned by, or held in the name of Garcia or Loughran; (b) publish notice of the final judgment on Uulala's website and social media channels, in a form not unacceptable to Commission staff, within 10 days of the entry of the final judgment; and (c) issue requests to remove UULA and EUULA tokens from any further trading on all digital asset trading platforms where UULA or EUULA tokens are or may be trading, including any that

Uulala previously contacted to request trading of UULA or EUULA tokens, and publish notice of such requests on Uulala's website and social media channels, in a form not unacceptable to Commission staff, within 10 days of the entry of the final judgment.

### VI.

Orders Garcia to undertake to cooperate with and not object to Uulala permanently disabling any UULA or EUULA tokens owned or beneficially owned by him or held in his name.

### VII.

Orders Loughran to undertake to cooperate with and not object to Uulala permanently disabling any UULA or EUULA tokens owned or beneficially owned by him or held in his name.

### VIII.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### IX.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### X.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: August 4, 2021

*/s/ Daniel O. Blau*
Daniel O. Blau
Jasmine M. Starr
Attorneys for Plaintiff
Securities and Exchange Commission